# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 20-49V
UNPUBLISHED

| | |
|---|---|
| JOHN HUTTON,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: February 12, 2024<br><br>Special Processing Unit (SPU); Entitlement to Compensation; Ruling on the Record; Findings of Fact; Influenza ("Flu"); Shoulder Injury Related to Vaccine Administration (SIRVA); |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Camille Michelle Collett*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

On January 15, 2020, John Hutton filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 22, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.  Relevant Procedural History

During the claim's life, some effort was made at settlement, but the parties could not find agreement. Accordingly, Respondent filed a Rule 4(c) Report on September 19, 2022, contesting compensation. Petitioner filed a motion for a ruling on the record on November 2, 2022. Motion for Ruling on the Record ("Mot."), ECF No. 59. Respondent filed a response on January 26, 2023. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 62. The matter is ripe for resolution.

## II.  Petitioner's Medical Records

Petitioner received a flu vaccine in his left shoulder on October 22, 2018. Ex. 1 at 6. On December 6, 2018 (forty-five days after vaccination), Petitioner saw chiropractor Casey Rogers with complaints of decreased range of motion in his left shoulder. Ex. 7 at 2. That same day, Petitioner saw nurse practitioner ("NP") Viki Sullivan with complaints of left shoulder pain "since" a flu vaccination. Ex. 2 at 32. An examination showed left shoulder tenderness, pain, but full range of motion and strength. *Id.* X-rays were taken on December 10, 2018, which showed osteoarthritis. Ex. 2 at 73.

On February 18, 2019, Petitioner saw physician's assistant ("PA") Kathleen Marty, for a report related to a workers' compensation claim. Ex. 13 at 53. The report noted that Petitioner's injury occurred on October 22, 2018, and that Petitioner had constant shoulder pain since administration of a vaccination on October 22, 2018. *Id.* at 53, 54. An examination showed tenderness and reduced range of motion. *Id.* at 54. Petitioner was diagnosed with a supraspinatus tendon tear. *Id.* at 56. An MRI performed on February 26, 2019 revealed partial tendon tears, tendinosis, and glenohumeral osteoarthritis. Ex. 2 at 74.

Petitioner began physical therapy on March 6, 2019. Ex. 3 at 27. He was assessed with reduced range of motion and strength. *Id.* Between March 6, 2019 and April 15, 2019, Petitioner attended seven physical therapy sessions. *Id.* at 7. During the timeframe, Petitioner saw Dr. Michael Cohen and reported pain since his flu vaccine. Ex. 2 at 34. His pain was described as radiating to his right forearm and hand, and he was assessed with a rotator cuff and bicep tendon tear along with arthrosis. *Id.* at 37.

Petitioner presented to Dr. Ryan Bennett, an orthopedist, on April 1, 2019, for shoulder pain since he received a flu shot in October. Ex. 4 at 13, 14. He reported worsening pain in his shoulder and arm, as well as weakness. After an examination and review of Petitioner's MRI, Dr. Bennett assessed him with a partial thickness rotator cuff

tear, subacromial bursitis, a SLAP tear, glenohumeral arthritis, and developing adhesive capsulitis. *Id.* at 17. A cortisone injection was administered at that time as well. *Id.*

On May 6, 2019, Petitioner again presented with left shoulder pain to another orthopedist, Dr. Marko Bodor. Ex. 5 at 5. Petitioner reported that his shoulder pain began when the vaccination needle was inserted, and thereafter his symptoms gradually worsened. *Id.* Dr. Bodor noted that "the patient appears to have a SIRVA injury." *Id.* at 6. An intra-articular injection was administered at that time. *Id.* at 7. An EMG/NCV study the next day was normal. Ex. 8.

Petitioner returned to Dr. Bodor on July 29, 2019, reporting increased shoulder pain that began to return approximately one month after his steroid injection. Ex. 9 at 5. A third steroid injection was therefore administered. *Id.* An MR arthrogram on July 30, 2019 showed osteoarthritis, degenerative lateral tear, multiple partial tendon tears with tendinosis, and chronic reactive synovial hypertrophy. Ex. 2 at 78. On October 25, 2019, Petitioner underwent a tendon debridement and debridement of a cortical cyst. Ex. 9 at 3.

On February 4, 2020, Petitioner returned to Dr. Bodor complaining of restricted range of motion. Ex. 13 at 68. Dr. Bodor opined that Petitioner had developed complications which contributed to his symptomatic osteoarthritis. *Id.* A fourth cortisone injection was administered. *Id.*

Petitioner eventually underwent a total shoulder arthroplasty and bicep tendinosis on October 17, 2020. Ex. 16. Thereafter, he attended twelve physical therapy sessions. Ex. 14. Petitioner continued to treat periodically thereafter. On September 24, 2021, Dr. Bodor preformed another debridement and aspiration. Ex. 17 at 3. He also saw Dr. Michael Tran for the purpose of issuing a Panel Qualified Medical Evaluation Report related to his left shoulder. Ex. 18. Dr. Tran assessed Petitioner with a unique SIRVA that caused significant tissue injuries, and recommended various future medical care. *Id.*

### III.     Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or

3

petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury.  *See* § 11(c)(1)(A)(B)(D)(E).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain his Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his left shoulder that would explain his symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported decreased range of motion and shoulder pain "since" a flu vaccine's administration. Ex. 7 at 2, Ex. 2 at 32. Thereafter, Petitioner continued to link his shoulder pain temporally to the vaccination. *See* Ex. 13 at 53 (record from February 18, 2019, stating that Petitioner had constant shoulder pain after receiving a flu vaccine on October 22, 2018); Ex. 2 at 35 (record from March 7, 2019, reporting shoulder

pain since his vaccination); Ex. 5 at 5 (record from May 6, 2019, stating that Petitioner's symptoms started when had a flu shot administered in October of 2018).

Respondent argues that Petitioner's statements are vague and fail to identify a specific onset date for his shoulder symptoms. Opp. at 9-10. Even so, a finding of Table-consistent onset can be made based on such a record. Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner consistently linked his shoulder pain to the October 22, 2018, flu vaccine – whereas there are no records suggesting an onset outside of 48-hours post-vaccination.

Further, while Petitioner did delay forty-five days before seeking treatment, the relevant medical records show that he did not attribute his pain to any other injury or cause. In fact, it is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, especially since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after. And individuals also often misconstrue the nature of their injury, and therefore fail to inform treaters of all specific facts relevant to onset until later. Here, the added detail of onset did not "wait" for months before being provided, but began to be reported less than two months post-vaccination. And Petitioner affirmatively and repeatedly linked his shoulder pain to the flu vaccine.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to his Left Shoulder

Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 22, 2018, in the United States. Ex. 1 at 6; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 10; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**Accordingly, the parties shall file a Joint Status Report by <u>March 1, 2024</u>, indicating whether a brief attempt at settlement discussions would be productive.**

**IT IS SO ORDERED.**

<u>/s/ Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master